251 So.2d 629

Albert MORRIS

v.

STATE.

6 Div. 34.

Court of Criminal Appeals of Alabama.

Aug. 17, 1971.

Roderick M. MacLeod, Jr., Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Robert E. Morrow, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellant was indicted for the offense of murder in the first degree. He was tried by a jury in the Jefferson County Circuit Court, convicted of murder in the second degree, and sentenced to twenty years in the penitentiary.

Appellant filed a plea of former jeopardy. The State filed a motion to dismiss this plea. The evidence taken on the State's motion to dismiss the plea indicated that on January 20, 1969, this case came up for trial and at that time a jury was struck, impanelled, and sworn; that before the indictment was read to the jury and before any plea was at that time entered, and before any further proceedings were had, the State made known to the court that the witness, Walter Murry, who had been subpoenaed by the State, and who had been present in court at the time the case was announced ready for trial, had suffered a heart attack and was unable to appear in court to testify; that said witness to the alleged murder was a material witness to the State's case and that based on those facts the State moved the court to enter a mistrial; that the appellant did not consent to a mistrial and objected to the court's granting a mistrial; and that on consideration thereof the court determined that there was a manifest necessity for a mistrial and then discharged the jury, entered a mistrial, and continued the case until March 24, 1969.

The trial of the case, from which this appeal arose began on March 24, 1969, and

it was on that date that the motion of the State to dismiss appellant's plea of former jeopardy was heard and passed upon by the trial court. Upon a consideration of the evidence submitted the trial court granted the State's motion to dismiss said plea.

The court refused appellant's request for the following charge in writing:

"36. If you believe from the evidence defendant killed the deceased and if you are not convinced the killing was malicious and premeditated but was in the heat of passion reasonably engendered by an assault actually committed or threatened, you cannot convict the defendant of murder in either degree."

The court also refused appellant's requested charges numbers 3 and 5, which are as follows:

"3. I charge you, members of the jury, that if you believe the evidence in this case you should find the defendant not guilty of murder in the first degree."

"5. I charge you, members of the jury, that if you believe the evidence in this case you should find the defendant not guilty of murder in the second degree."

State's witness, Winnie Johnson, testified in substance that she worked in the cafe where the difficulty occurred in which the defendant killed the deceased; that the defendant came into the cafe and ordered some sandwiches; that the defendant was drinking; that the deceased was in the cafe and was sitting on a stool at the counter; that the defendant was sitting at a table; that she did not see any trouble or hear any harsh word between the two until she saw the deceased lying on a table with his hands up and the defendant standing over him hitting him in the chest with a hand which held a knife; that the table turned over and the deceased fell on the floor; that the deceased attempted to get up but the defendant was

standing over him still stabbing at him; that Claude Hardaway tried to pull the defendant away from the deceased and Andrew Norwood, who had been seated at the table with defendant, stabbed him (Hardaway) in the back; that Hardaway then turned the defendant loose and that the defendant was still standing over the deceased swinging at him. Winnie Johnson further testified that the deceased did not have any weapon in his hand during the difficulty.

Claude Hardaway testified in substance that he came into the cafe about eleven o'clock, before the difficulty began; that the deceased was sitting at the bar on a stool and that the defendant came into the cafe; that the first he knew of any trouble was when he heard a scuffling and looked around and the deceased was getting up off the stool and the defendant threw his hand back stabbing at the deceased; that he was stabbing at his chest; that deceased was just backing up with his hands up; that he could see the deceased's hands and that he did not have a knife; that he did not have anything; that the defendant was stabbing at him while he was backing away; that the deceased fell across a table on his back and his hands were still up; that while deceased was on his back on the table the defendant was stabbing at him; that the defendant had a knife in his hand at the time he was stabbing at the deceased; that he pushed the defendant back and said don't do that; and that someone was pulling the deceased back and that Andrew Norwood stabbed the witness.

There was other evidence submitted substantiating the testimony of the two aforementioned witnesses, as well as testimony which conflicted with it.

The evidence further showed that the deceased died as a result of knife wounds received on the occasion in question.

We shall first consider the ruling of the trial court in granting the motion of the State to strike the defendant's plea of former jeopardy.

In the case of Lyman v. State, 47 Ala. 686, the Supreme Court of Alabama declared:

"To constitute jeopardy, in the sense here used, it is not necessary there should be an actual conviction or acquittal.

"The rule on this subject, as I understand it, is, that in a case of felony a prisoner is put in jeopardy, in a legal sense, when he is put upon his trial on a good indictment, has been arraigned and pleaded not guilty, or the plea of not guilty has been entered for him by the court, and a lawful jury is duly impanneled and sworn *and charged with his trial.*

"There is no formal, uniform mode with us in charging a jury with the trial of the prisoner. The usual way is, when the jury is impanneled and sworn, and the trial is actually ready to proceed, for the solicitor, before any witness is examined, to read the indictment to the jury. When this is done, the prisoner is then in jeopardy. * * *

"A solemn form of charging the jury with the trial of a prisoner, may be seen in Wharton's fourth and revised edition of his American Criminal Law, Sec. 590.

"When the jury is duly charged with the trial of a prisoner, he is entitled to have a verdict returned by them, and they cannot be discharged by the court, unless in cases of pressing necessity; and if discharged without such necessity, it is equivalent, so far as the prisoner is concerned, to a verdict of acquittal, and he cannot be subjected to another trial." (Emphasis added.)

Again the Supreme Court of Alabama in Scott v. State, 110 Ala. 48, 20 So. 468, said:

" * * * It seems to be generally agreed that to constitute jeopardy, the cause or accusation should in some form be submitted to a jury impanelled to try it.

\* \* \* \* \* \*

"Formerly and now in England, the act of submitting the cause to the jury, or charging them with the accusation as contained in the indictment against a defendant, was quite formal. The clerk of the court directed them to look on the prisoner, and hearken to the evidence, and read or stated to them the substance of the indictment, the plea, and their duty to find the defendant guilty or not guilty.

\* \* \* \* \* \*

" * * * [I]t is shown without conflict, that the indictment was not read to the jury, nor was any plea interposed by or for the defendant, and, so far as appears, the jury were not aware of what charge they were to try him: no submission of his cause was made to them, and they had no charge or instruction touching the matter they were to try. Under this state of facts, on the authorities cited, we are of the apprehension, that jeopardy did not begin in the impanelling of the first jury to try defendant, and, in what occurred the defense of former jeopardy was not maintainable. * * *"

More recent decisions to the same effect may be found in Artrip v. State, 41 Ala.App. 492, 136 So.2d 574, and Lyles v. State, 41 Ala.App. 1, 122 So.2d 724.

█ Under the facts in this case, and by virtue of the cited authorities, we hold that the judgment of the trial court granting the motion of the State to strike the defendant's plea of former jeopardy was without error.

█ Refusal of Charge No. 36 did not constitute error since the same principle of law which the charge attempts to state was substantially and fairly given to the jury in the court's oral charge. Moreover, we consider the charge to be confusing as it pertains to the burden of proof.

**136**

■ We come now to defendant's requested Charges Nos. 3 and 5. We need not notice Charge No. 3 for the reason that the defendant was not convicted of murder in the first degree and was not harmed by its refusal.

The defendant was convicted for murder in the second degree and we are called upon to consider the defendant's requested Charge No. 5.

In Warren v. State, 34 Ala.App. 447, 41 So.2d 201, the court said:

> "Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation or premeditation. Title 14, Sec. 314, Code 1940; Miller v. State, 145 Ala. 677, 40 So. 47; Strickland v. State, 151 Ala. 31, 44 So. 90.

> "The presence of malice in murder in the second degree distinguishes the offense from manslaughter in the first degree. Harold v. State, 12 Ala.App. 74, 67 So. 761.

> " 'Legal malice' as applied to homicide is an intent unlawfully to take the life of another without legal excuse, justification or mitigation. It is not necessarily ill will or hatred.

> "The intentional and unjustifiable use of a deadly weapon in a deadly manner raises the presumption of malice. This prima facie presumption prevails unless the circumstances incident to the killing rebut the presumption. * * *"

■ Conflicting evidence presents a question for the jury as to the defendant's guilt. In Bradford v. State, 35 Ala.App. 407, 47 So.2d 599, the court stated the rule in this manner:

> "* * * Thus, the evidence was in conflict, and where this is true the appellate courts of this State have universally held that a jury question is presented, that is to say, unless the evidence palpably fails to make out a prima facie case, or if its tendencies support the charge made, or affords inferences to be drawn by the jury in support of the charge, determination of its weight is for the jury."

■ There was evidence in this case that clearly makes a prima facie case of murder in the second degree if believed by the jury. Had the court given the said requested charge, it would have invaded the province of the jury. There was no error in its refusal.

In accordance with Tit. 15, § 389, Code of Alabama, 1940, as amended 1958, we have carefully reviewed the record on this appeal and find no error contained therein.

The judgment appealed from is, therefore, due to be and is hereby affirmed.

The foregoing opinion was prepared by L. S. Moore, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Affirmed.